# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**STRATEGIC DEFENSE INTERNATIONAL, INC.,**

      **Petitioner,**

**vs.**                                             **Case No. 8:10-CV-408-T-27EAJ**

**UNITED STATES OF AMERICA,**

      **Respondent.**

_____/

## ORDER

**BEFORE THE COURT** is Strategic Defense International, Inc.'s (hereafter "Defendant")

Petition for a Writ of Error Coram Nobis to Vacate a Judgment (Dkt. 1) and the Government's

response in opposition (Dkt. 8).[1]  Upon consideration, the petition is DENIED.[2]

---

[1] The Government's response in opposition did not address any of the substantive issues raised by Defendant and accordingly did not assist the Court in resolving the merits.

[2] The instant petition is another misguided attempt by Defendant to challenge its underlying criminal conviction in Case No. 8:05-CR 475-T-27TGW.  Since being convicted, Defendant and its President, Thomas F. Spellissy, have filed no less than eight pleadings seeking a new trial (CR Dkts. 125, 129, 130, 151, 156, 157, 158, 185).  In addition, and somewhat incredibly, considering that Defendants were represented by counsel who should have known that the motion was procedurally improper, Defendants filed a *post* trial "Renewed Motion to Suppress," purporting to re-litigate a pre-trial motion to suppress the results of an executed search warrant, notwithstanding that the district court conducted a *Franks* hearing. (CR Dkt. 149).  Moreover, again through counsel, Defendants filed a post trial "Motion to Compel the United States to Produce Impeachment and/or Exculpatory Evidence." (CR Dkt. 193).  The rulings on those motions which were appealed have been affirmed. (CR Dkts. 134, 206, 216).  The instant motion constitutes yet another attempt to re-litigate the merits of Defendant's underlying criminal conviction.  Defendant's co-defendant filed a similar motion as well, albeit *pro se.* See 8:10-CV-661-27TBM

    Because of the number of motions, their lack of merit, repetitive nature ("repeating the same mantra of innocence, complaints about the evidence, incompetent counsel, newly discovered evidence, and prosecutorial misconduct"), and because Defendants resorted to disparaging comments directed toward the prosecutor and the United States Attorney's Office, this Court found that "Defendants and their attorneys have abused the judicial process." (CR Dkt. 195).  Pursuant to the Court's inherent authority to manage its docket, Defendants were enjoined from filing any further pleadings other than a notice of appeal in the case without obtaining prior leave of Court. (CR Dkt. 195, p. 5-6).  As the Government correctly points out, the instant filing essentially violates that order.  Defendants, under the guise of separately filed petitions seeking coram nobis relief, have done precisely what they were enjoined from doing.  Sanctions will be considered with respect to any additional filings.

The writ of coram nobis is an extraordinary remedy of last resort, "available only in compelling circumstances where necessary to achieve justice." *United States v. Mills*, 221 F.3d 1201, 1203 (11th Cir. 2000). The authority of a district court to issue a writ of error coram nobis under the All Writs Act, 28 U.S.C. § 1651(a), is accordingly limited. *United States v. Morgan*, 346 U.S. 502, 509 n.15 (1954)("This jurisdiction was of limited scope; the power of the court thus to vacate its judgments for errors of fact existed, as already stated, in those cases where the errors were of the most fundamental character; that is, such as rendered the proceeding itself irregular and invalid.")(quoting *United States v. Mayer*, 235 U.S. 55, 69 (1914)). It has traditionally been reserved "to bring before the court factual errors 'material to the validity and regularity of the legal proceeding itself,' such as the defendant's being under age or having died before the verdict." *Carlisle v. United States*, 517 U.S. 416, 429 (1996)(quoting *Mayer*, 235 U.S. at 67-68).

Further, as was noted long ago by the Supreme Court, and more recently repeated, "it is difficult to conceive of a situation in a federal criminal case today where that remedy would be necessary or appropriate." *Carlisle v. United States,* 517 U.S. at 429 (quoting *United States v. Smith,* 331 U.S. 469, 476 n.4 (1947)). In sum, coram nobis review is an "extraordinary remedy" and is limited to errors "of the most fundamental character." *United States v. Mills*, 221 F.3d at 1203. Fundamental errors do not include prejudicial misconduct during trial or claims of newly discovered evidence. *Id; Moody v. United States,* 874 F.2d 1575, 1577 (11th Cir. 1989), *cert. denied*, 493 U.S. 1081 (1990). Nor is the writ available to re-litigate criminal convictions. *United States v. Addonizio*, 442 U.S. 178, 186 (1979).[3]

---

[3] Where remedies are shown to have been available but a petitioner did not avail himself of those remedies, he must show sound reasons for not having sought appropriate relief earlier. *Mills*, 221 F.3d at 1203.

In the instant petition, Defendant presents nothing close to the requisite showing of "errors of the most fundamental character" or "circumstances compelling such action to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511 (1954). Rather, the petition raises claims of newly discovered evidence, prosecutorial misconduct, claimed *Brady* violations, and claims of insufficient evidence, none of which are cognizable in a coram nobis proceeding. Those claims and contentions do not raise errors of a fundamental character, that is, "matters of fact which ha[ve] not been put in issue or passed upon and [are] material to the validity and regularity of the legal proceeding itself." *United States v. Mayer*, 235 U.S. at 68. Finally, Defendant's claims of ineffective assistance of counsel include unsupported conclusory allegations, contentions refuted by the record, and complaints about tactical decisions made by experienced defense counsel.

## Discussion

Defendant, together with its President, Thomas J. Spellissy, was convicted of conspiracy to defraud the United States and to commit bribery and wire fraud, in violation of 18 U.S.C. § 371. The convictions were affirmed on appeal. *United States v. Spellissy*, 243 Fed. Appx. 550 (11th Cir. 2007). As summarized by the Eleventh Circuit:

> The convictions arose out of the alleged general services agreement between Spellissy, who was on "terminal leave" from the military, and William Burke, a civilian contractor, to obtain preferential treatment for their clients. The Government charged Burke by information with bribery, in violation of 18 U.S.C. § 201(b)(2)(A) and (B) and (2), to which Burke pled guilty as charged. Spellissy and SDI were convicted of conspiracy to defraud the United States and commit two offenses (bribery and wire fraud), in violation of 18 U.S.C. § 371.

*United States v. Spellissy*, 243 Fed. Appx. at 550.[4]

---

[4] Defendants' post trial Renewed Motion for Judgment of Acquittal was granted as to Counts Two and Three, and denied as to Counts One, Four and Five. (CR Dkt. 72). Defendants' alternative Motion for New Trial was granted as to Counts Four and Five but denied as to Count One, the conspiracy count. *Id.*

In its petition, Defendant raises nine grounds: (1) Government's failure to turn over exculpatory or impeaching evidence, (2) prosecutor's false arguments during trial, (3) Government's use of perjured testimony at trial, (4) and (5) Government suppression of evidence, (6) actual innocence, (7) insufficiency of the evidence and indictment, (8) ineffective assistance of counsel at during pretrial, trial, and sentencing, and (9) the denial of its right to testify at the *Franks* hearing and trial by counsel ("counsel's prevention to let SDI testify on its own behalf").[5]

The essence of Defendant's several contentions, excluding its claim of ineffective assistance of counsel, is that it was not guilty of the charge for which it stands convicted, there was insufficient evidence to support the conviction, the Government withheld evidence, and the prosecutor engaged in prosecutorial misconduct.  These are essentially the same claims Defendant has been repeating in its various filings in the underlying criminal case, buttressed from time to time with allegations of "new evidence." (CR Dkts. 125, 151).  Allegations of newly discovered evidence, prejudicial misconduct during trial, and attempts to have the district court revisit its pre-trial rulings are not cognizable in coram nobis. *Moody v. United States,* 874 F.2d 1575, 1577 (11th Cir. 1989) (citing *Mayer*, 235 U.S. at 69).  Accordingly, they are not cognizable in a coram nobis proceeding. *See United States v. Aviles,* 2010 WL 2070677, 1 (11th Cir. May 25, 2010) (quoting *Alikhani v. United States,* 200 F.3d 732, 734 (11th Cir. 2000)); *see also United States v. Jackson*, 394 F.2d 114, 115 (5th Cir. 1968).

Indeed, three of the contentions Defendant raises were expressly addressed by the Eleventh

---

[5] Defendant also asserts that the district court erred in denying in part Defendants' motion for judgment of acquittal, that its pre-trial motion to suppress should have been granted, and that the Government committed "numerous Brady violations."  These issues are not cognizable in a coram nobis proceeding. *See United States v. Aviles,* 2010 WL 2070677, 1 (11th Cir. May 25, 2010)(matter which could have been raised on direct appeal not cognizable).

Circuit in its opinion affirming Defendant's conviction.  On appeal, Defendant's challenges to the denial of Defendants' motion to suppress, the admission into evidence of William Burke's Plea Agreement, and the sufficiency of the evidence were expressly rejected by the Eleventh Circuit. Accordingly, these claims are not cognizable in this coram nobis proceedings. *See Jackson v. United States*, 394 F.2d 114, 115 (11th Cir. 1968)("The question of the alleged unreasonable search and seizure cannot again be raised by appellant, for it was effectively disposed of and affirmed by us on the merits of the case itself.").

Defendant's purported *Brady* claims raised as **Ground One** involve factual issues concerning Spellissy's status with the Army which were litigated during trial and accordingly resolved by the jury and court.  As acknowledged by Defendant, Spellissy's status (active or retired) with the Army at the time of the conspiracy was the subject of trial testimony.  Additionally, Defendant raised this issue in prior post trial motions. (CR Dkt. 129, p. 2; CR Dkt. 151, pp. 10-11).  Defendant now claims the Government is in possession of "new evidence" which contradicts its trial theory that Spellissy was retired from the Army at the time of the offense, and the evidence presented in support of the search warrant affidavit. (Dkt. 1, p. 13).

Defendant asserts that "[n]ow, the Government has evidence that the President was actually on active duty while the alleged conspiracy took place." (Id. at p. 14).  Specifically, in support of its claimed *Brady* violation, Defendant alleges: "The Army conducted three review boards *after* the trial and determined that the offense of conviction occurred while on active duty.  The Army has evidence to justify their determination. SDI does not have this evidence.  The Government never turned this

evidence over to trial counsel during discovery." (Dkt. 1, at pp. 15-16)(emphasis added).[6]

Defendant's claim of "new evidence" is not cognizable in a coram nobis proceeding. *Mills*, 221 F.3d at 1204; *Moody*, 874 F.2d at 1577("A claim of newly discovered evidence relevant only to the guilt or innocence of the petitioner is not cognizable in a coram nobis proceeding.").  Nor do Defendant's contentions constitute compelling circumstances supporting coram nobis relief.

Defendant's next claim, **Ground Two**, is that the Government used "perjured testimony" in the trial, referencing the testimony of a cooperating witness William Burke.  Defendant contends that the Government "should have been precluded from using [Burke's] plea agreement to impeach him." (Dkt. 1, pp. 21-24).  This claim was expressly rejected by the Eleventh Circuit in its opinion affirming the conviction.

Further, Defendant contends that the prosecutor presented "false statements to the Court and Jury during his opening and closing argument." (Dkt. 1, p. 16).  Defendant complains again that the Government "suppressed" evidence that Spellissy "was on active duty when the alleged offense of conviction was committed." (Id.)  Defendant enumerates a "list of false facts told to the Jury at trial." (Id. at p. 17).

Defendant's complaints of prosecutorial misconduct and the knowing use of perjured testimony merely repeat contentions Defendants previously raised in their various post trial motions. (CR Dkt. 151, pp. 16-19, 20; CR Dkt. 156, pp. 9-10; CR Dkt. 158, pp. 9, 15-16).   In short, this is yet another attempt to litigate those issues, on the misguided theory that the Court has jurisdiction

---

[6] The purported "evidence" apparently came into existence *after* the trial, according to Defendant.  Accordingly, it could not have been withheld during trial because it did not yet exist.  Moreover, the findings of an Army review board would not constitute evidence.

to revisit them on coram nobis review.[7]  Finally, these contentions do not relate to "matter[s] of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid." *Moody v. United States*, 874 F.2d at 1576-77. Fundamental errors do not include prejudicial misconduct during trial or newly discovered evidence. *Id.; United States v. Mills*, 221 F.3d at 1203.  These claims are accordingly not cognizable here.

In **Ground Three**, Defendant complains that witness Pettigrew's testimony was false, and that the combination of the use of perjured testimony, the withholding of exculpatory evidence, and prosecutorial misconduct constitute "cumulative error" which violated Defendant's "right to due process of law." (Dkt. 1, pp. 25-27).  Defendant made the same argument with respect to Pettigrew's testimony in a prior motion. (CR Dkt. 151, pp. 23, 32).  Regardless, these contentions are not, even considered in the aggregate, fundamental errors or fundamental irregularities supporting the extraordinary relief available by coram nobis.  While Defendant may take issue with Pettigrew's testimony, Defendant has not demonstrated that it was false, in the sense that the trial was rendered unfair.

In **Ground Four**, Defendant contends that the "Government knowingly withheld the taped interview between investigators and the USSOCOM Program Manager for Ammunition." (Dkt. 1, p. 28).  This is the same complaint Defendant made in two prior motions, albeit one was procedurally improper. (CR Dkt. 147; CR Dkt. 151, p. 9)("Defendants were never given this tape . . .").

Don Jones is identified as the "USSOCOM Program Manager for Ammunition." (Id.)

---

[7] The Court notes that although filed ostensibly under the signature of an attorney admitted to the Florida Bar, the motion appears to be written in the first person. (Dkt, 1, pp. 18-19)(". . . improper shifting of the burden of proof to me"; " . . it is my burden to prove . . .").

Defendant describes the "taped interview"of Jones as "New evidence" obtained "after trial." (Id.) The existence of the tape, however, was referenced in the affidavit of Agent Calvert filed in support of the search warrant, as Defendant acknowledges.  Indeed, Defendant quotes from Agent Calvert's Affidavit for Search Warrant which expressly refers to the March 2, 2005 taped interview of Jones. (Dkt. 1, p. 28).

Defendant apparently has since obtained what it refers to as the "Vaughn matrix" in a separate FOIA proceeding.  It contends that the matrix "is missing an alleged 'taped interview' between Mr. Don Jones, USOCOM Ammunition Program Manager and Colonel Rupp, Inspector General."  Defendant considers the matrix as "new evidence." (Id. at p. 28).  From this, Defendant apparently infers that Calvert referred to a tape which did not exist, and the Government knew this.

Ironically, Defendant does not contend that the tape recording exists or does not exist. ("The Government's alleged taped interview may or may not exist.").  Notwithstanding, Defendant continues to malign the prosecutor by positing "if the prosecutor knew or should have known that the tape never existed, then he suborned perjury." (Id. at p. 29).  Alternatively, Defendant contends that if the tape does exist, it was never disclosed by the Government, another claimed *Brady* violation. (Dkt. 1, p. 30).

Considering the extensive pretrial *Franks*[8] hearing and the significance of Agent Calvert's affidavit and testimony with respect to the merits of Defendants' pre-trial motion to suppress, including the statements he attributed to Jones, these contentions merely raise factual matters which could have been addressed before trial.  Whether or not the tape of Jones' interview exists today is of no moment.  The recording was at issue during the *Franks* hearing.  It was expressly referenced

---

[8] *Franks v. Delaware*, 438 U.S. 154 (1978).

in Agent Calvert's Affidavit for Search Warrant.  Defendant invoked its right to Rule 16 discovery before trial, and presumably received all that was required to be produced by the Government.

Defendant's contention is essentially a complaint of trial irregularity, a claim not cognizable here.  *Alikhani v. United States*, 200 F.3d at 735 (writ available "only when there is and was no other available avenue of relief.").[9]  Where a petitioner could have but did not pursue a claim in pretrial proceedings, the claims are not cognizable on coram nobis review. *Alikhani*, 200 F.3d at 734.  This contention does not raise a fundamental factual error or fundamental irregularity in the trial proceedings.

In **Ground Five**, Defendant continues to complain that the Government suppressed favorable evidence, identifying documents Defendant obtained in its FOIA proceeding. (Dkt. 1, pp. 32-35).  By Defendant's account, these documents, if they existed,[10] demonstrate that the district court erred in finding that the "70mm 'Bunker Buster' warhead was a 'particular matter' under [Spellissy's] responsibility while on active duty . . ." in its order denying Defendant's motion to suppress. (Dkt. 1, p. 32).

Defendant now contends that "[t]he Motion to Suppress should be granted based on that SDI or its President did not have a conflict of interest on the 70mm Multipurpose Penetrator warhead . . ." (Dkt. 1, p. 34).  Once again, these are factual issues which were exhaustively litigated before and during trial and may not be re-litigated here.  Accordingly, these issues are not cognizable in coram nobis proceedings.

---

[9] *United States v. Arnold*, 117 F.3d 1308 (11th Cir. 1997) is distinguishable.

[10] According to Defendant, "Given the Government's misconduct in prosecuting this case, SDI doubts if they ever existed." (Dkt. 1, p. 32).

-9-

In **Ground Six**, Defendant contends that it is "factually innocent." This is a frivolous contention, one which has been made in at least four prior motions (CR Dkts. 151, 156, 157, 158). Defendant was convicted after a jury trial (CR Dkt. 63). Although all but one of the counts of conviction were vacated by the district court, Defendant's conviction on Count One, the §371 conspiracy count, was affirmed on appeal. Defendant merely repeats the same arguments challenging the sufficiency of the evidence, adding a proffer of newly obtained witness statements purporting to rebut the Government's trial theory. This contention is not cognizable here.

As for Defendant's complaints that "the Government prevented witnesses from being interviewed by SDI's trial attorney and prevented a witness to [sic] honor his trial subpoena . . . ," Defendant acknowledges that this is the same contention Defendants made in prior motions with respect to other individuals. (CV Dkt. 1, p. 36; CR Dkts. 125, 129, 159, 172).

Further, the two affidavits which Defendant contends are "new evidence" are from individuals known to the defense prior to trial. That these individuals, according to Defendant, "voluntarily" came forward to be interviewed is of no moment. Moreover, the subject of the affidavits, Burke's authority to grant preferential treatment to Defendant, was an issue at trial and any claimed interference by the Government in Defendant's ability to interview or subpoena witnesses for trial was a matter for the trial court to address. Indeed, the district court did address similar complaints raised by Defendants before trial, in part related to the Government's Motion to Quash Certain Subpoenas Issued by Defendant. (*See* CR Dkts 33, 35, 36; CR Dkt. 146, p. 3)("If court intervention was necessary to compel the attendance of a witness who had been subpoenaed . . . , it was incumbent upon the defense to present the matter to the Court, which they did not do . . . The Court was available to address and resolve any alleged non-compliance with subpoenas by

-10-

military personnel, as it had done with respect to securing military personnel for testimony at the suppression hearing . . . Defendants knew that the Government would likely resist attempts to subpoena active military personnel for trial."). This issue cannot be re-litigated here.

In **Ground Seven**, Defendant challenges the sufficiency of the evidence and the validity of the indictment.[11] These issues could have been raised on appeal and are therefore barred from review in a coram nobis proceeding. *Alikhani v. United States*, 200 F.3d at 735(writ available "only when there is and was no other available avenue of relief."); *United States v. Keane*, 852 F.2d 199, 203 (7th Cir. 1988)("[c]laims that could have been raised by direct appeal are outside the scope of the writ."). In fact, Defendant unsuccessfully challenged the sufficiency of the evidence on appeal.

In **Ground Eight**, Defendant asserts a claim of ineffective assistance of counsel.[12] Defendant contends that its attorney was ineffective in conducting the *Franks* hearing, and in preparing for trial. The irony of this contention is that Defendant credits its attorney with having conducted a meaningful preparation for the *Franks* hearing: "Trial counsel performed no meaningful pretrial investigation *such as they did for the Franks Hearing*." (Dkt. 1, p. 61)(emphasis added). Notwithstanding, Defendant maligns defense counsel for their performance.

Motion to Suppress (<em>Franks</em>) Hearing

With respect to counsels' performance relating to the *Franks* hearing, Defendant contends

---

[11] It is apparent that Defendant seizes upon an inadvertent reference to mail fraud by the Court in its ruling on Defendants' motion for judgment of acquittal. Defendant expressly cites to that comment in its petition. (Dkt. 1, p. 55)(citing CR Dkt. 113, p. 57, line 57). From this inadvertent comment, Defendant constructs a disingenuous argument that "SDI was erroneously convicted of conspiracy to commit mail fraud . . . because this object of the conspiracy was not charged in the Conspiracy Count of the Indictment" [and] "[i]n this case the broadening of the Indictment occurred at the JNOV Hearing." (Dkt. 1, pp. 54-55). This argument is patently frivolous.

[12] Corporations may petition for relief by way of coram nobis based on a claim of fundamental defect such as ineffective assistance of counsel. *See United States v. Rad-O-Lite of Philadelphia, Inc.*, 612 F.2d 740, 744 (3rd Cir. 1979); *United States v. Mett*, 65 F.3d 1531, 1535 (9th Cir. 1995).

that counsel "thought" that the object of the search warrant was to obtain evidence of a violation of the Procurement Integrity Act, 41 U.S.C. § 423, rather than 18 U.S.C. §§ 207(a) and (b) and 208(a). (Dkt. 1, p. 57). This allegation of counsels' alleged mistaken subjective understanding is belied by the Motion to Suppress filed by Defendant's counsel.

In the motion to suppress, counsel expressly refers to Agent Calvert's affidavit and attached it to the motion (CR Dkt. 21-1). In paragraph 3 of the affidavit, Calvert avers a violation of "Title 18 U.S.C. 207(a) and (b) or 208(a)." Calvert refers to §§ 205, 207, and 208 in paragraphs 8 and 9 as well. Notwithstanding counsel's reference to the Procurement Integrity Act in the motion, counsel obviously was aware that Calvert relied on §§ 207 and 208. (CR Dkt. 21, pp. 1, 5, 6). The Government characterized counsel's reference to the Procurement Integrity Act in the Motion to Suppress as "clever," apparently attributing some tactical reason for its inclusion in the motion (CR Dkt. 22, p. 3, ¶ 4; p. 5, ¶ 9). If indeed counsel's reference to the Act was tactical, counsel's tactic, even if ultimately unsuccessful, does not support Defendant's claim of ineffective assistance.[13] If counsel was mistaken, it was not an unreasonable mistake and in any event, counsel referenced the very statutes Calvert relied on.

Defendant's unsupported conclusion that counsel misunderstood the prosecutorial object of the search warrant does not support a claim that counsel's performance was deficient in any respect

_____

[13] Counsel's strategies cannot be second guessed, as "judicial scrutiny of counsel's performance must be highly deferential." *Chandler,* 218 F.3d at 1314 (quoting *Strickland v. Washington,* 466 U.S. at 689). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). Moreover, where the record is incomplete or unclear about counsel's actions, it is presumed that counsel exercised reasonable professional judgment. As counsel's trial strategy is presumptively reasonable, the determination is not "that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not do a specific act." Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Chandler,* 218 F.3d at 1314-15.

and that it fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687.  Nor has

Defendant shown that there is a reasonable probability, but for the claimed deficient performance

by counsel, that the result of the suppression hearing would have been different, that is, a reasonable

probability "sufficient to undermine confidence in the outcome." *Id.* at 694.

In order to demonstrate ineffective assistance of counsel, Defendant must satisfy the test

established by *Strickland v. Washington*, 466 U.S. 668 (1984):

> According to *Strickland*, first, the defendant must show that counsel's performance
> was deficient. This requires showing that counsel made errors so serious that counsel
> was not functioning as the "counsel" guaranteed the defendant by the Sixth
> Amendment. Second, the defendant must show that the deficient performance
> prejudiced the defense. This requires showing that counsel's errors were so serious
> as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998)(citing *Strickland*, 466 U.S. at 687).

In assessing a lawyer's performance, there is a strong presumption that counsel's performance

was reasonable and that counsel exercised "reasonable professional judgment" in making all

significant decisions. *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000), *cert. denied*,

531 U.S. 1204 (2001).  The only determination is whether Petitioner's attorney's performance was

within "the wide range of professionally competent assistance," an objective determination. *Van*

*Poyck v. Fla. Dept. of Corrections,* 290 F.3d 1318, 1322 (11th Cir. 2002)(quoting *Strickland*, 466

U.S. at 690).  A defendant complaining of ineffective assistance must also establish that counsel's

deficient performance resulted in prejudice. *Id.*  Where, as here, a defendant is unable to establish

either prong of the *Strickland* analysis, the claim must be dismissed.  *See Coulter v. Herring*, 60 F.3d

1499, 1504 (11th Cir. 1995).

Regardless of the wording of the Motion to Suppress, it is apparent that counsel understood

-13-

the objective of the search warrant and the statutes Calvert claimed had been violated.  Counsel's motion resulted in an evidentiary hearing being conducted, over the objection of the Government. Significantly, as a result of counsel's efforts and arguments, the Court disregarded several of Calvert's averments because they were "intentional misrepresentations and statements rations made in reckless disregard for the truth," and "omit[ted] material facts critical to probable cause . . . ." (CR Dkt. 44, pp. 5-8; 12 ).

Based on the results of the suppression hearing, it is apparent that counsel's representation during the suppression hearing was not deficient, regardless of counsel's allegedly mistaken reference to the Procurement Integrity Act in the motion.  Counsel's performance was objectively reasonable and Defendant has not demonstrated that any claimed deficient performance resulted in prejudice.  The Motion to Suppress was due to be denied regardless of the statutes cited in the motion.  Where, as here, Defendant is unable to establish either prong of the *Strickland* analysis, the claim must be dismissed.  *See Coulter v. Herring*, 60 F.3d at 1504.

## At Trial

Defendant next contends that counsel was ineffective in failing to obtain a copy of the initial work agreement ("general services agreement") between Burke and Defendant. (Dkt. 1, p. 58). Specifically, Defendant contends that counsel "failed to demand that the prosecutor give them a copy of [the general services agreement] as required by Brady v. Maryland, 373 U.S. 83, 87-88 (1963)." (Id.).  Maintaining that no crime was committed by Burke and Defendant, Defendant claims that the agreement "defines a legitimate and legal agreement that SDI had with Burke."  Defendant also criticizes counsel's cross examination of certain Government witnesses and failure to object to certain testimony.

-14-

There was no dispute that Defendant and Burke had an agreement defining the services to be performed by Burke and how he was to be compensated. The Eleventh Circuit's opinion affirming Defendant's conviction expressly references the general services agreement ("The convictions arose out of the alleged general services agreement between Spellissy, who was on "terminal leave" from the military, and William Burke, a civilian contractor, to obtain preferential treatment for their clients."). Indeed, in the district court's order granting a judgment of acquittal on Counts Two and Three (the bribery counts), the Court found that Burke's uncontradicted testimony was that he actually performed "more than 45 hours of services for Defendants" and was compensated for those services at an hourly rate reflected in the invoice he submitted to Defendant (CR Dkt. 72, pp. 2-3). A written document memorializing the agreement between Burke and Defendant would have added little to Burke's testimony, and certainly would not have countered the evidence supporting the conspiracy charged in Count One, as Defendant argues: "This evidence would substantiate that SDI never asked Burke to do anything illegal just as Burke repeatedly testified to." (Dkt. 1, p. 59). Defendant demonstrates no resulting prejudice from this allegation of deficient performance by counsel.

Defendant complains that counsel "failed to properly cross examine government witnesses, Uhler and Pettigrew" and failed to object to a response to a question posed to Pettigrew (Dkt. 1, p. 59). Defendant argues that counsel had available to them contradictory statements from two other individuals and faults counsel for failing "to make this known to the Jury that that [sic] Pettigrew gave a false statement." (Id.) Defendant also complains that counsel failed to impeach witness Uhler with a prior inconsistent statement regarding Spellissy's engagement by SOCOM as a contractor. (Dkt. 1, pp. 56-60).

-15-

Defendant's contentions have no merit.  First, as to Pettigrew's testimony, he could not have been impeached by another individual's out of court statement.  Moreover, whether Burke was inaccurately described as a "public official" by Pettigrew was not material to the offenses charged in the Indictment.  It was undisputed that Burke was a civilian contractor.  Defendant's quarrel with counsel's cross examination does not demonstrate that counsel's cross examination was objectively unreasonable.

As for counsel's examination of Uhler, Defendant does not establish deficient cross examination or prejudice resulting from the claimed deficient performance.  As a result of counsel's questioning, Uhler acknowledged that Spellissy was hired by SOCOM as a contractor.  He merely qualified his testimony by stating "[t]hat's what I am told."  Contrary to Defendant's contention, counsel's cross examination of Uhler did bring out that SOCOM hired Spellissy as a defense contractor.  Whether Uhler had personal knowledge of that was immaterial to counsel's point. Defendant's contention of deficient cross examination is accordingly without merit.

Defendant also takes issue with counsel's trial strategy.  Defendant complains that counsel "performed no meaningful pretrial investigation such as they did for the *Franks* Hearing," never interviewed certain individuals, failed to call "these key witnesses" to testify, didn't call Agent Calvert to testify and "made no effort to corroborate Burke's testimony," and failed to call Burke's co-workers to "verify Burke's testimony." (Id. at p. 61).

As demonstrated by counsels' pretrial filings, counsel conducted an adequate pretrial investigation.  Counsels' first motion to continue trial demonstrates that they were actively conducting a pretrial investigation, and were in possession of and reviewing "approximately two thousand (2000) pages as well as three (3) hard drives, which have yet to be obtained." (CR Dkt. 14,

¶ 3).  The content of counsels' successful Motion to Compel (CR Dkts. 21, 28), in which they moved to compel the production of certain documents in the possession of the Government, further demonstrates an intimate familiarity with and active pretrial investigation of the Government's case and the formulation of defensive strategies.  Further demonstrating defense counsels' active pretrial investigation are the subpoenas they issued, which prompted the Government to file its Motion to Quash Certain Subpoenas Issued by Defendant (CR Dkt. 33).  Finally, counsel's prosecution of the pretrial Motion to Suppress further demonstrates an appropriate pretrial investigation

Likewise, the record demonstrates that counsel prepared for trial and the presentation of a defense.  Counsel filed trial exhibit and witness lists, which included two of the three "key witnesses" Defendant complains should have been called. (CR Dkts. 45, 46).  Defendant's unsupported criticism of counsel's pretrial investigation does not support a finding of deficient performance or prejudice resulting from any alleged deficient performance.  Further, Defendant's hindsight criticism of counsel's tactical decision not to present a defense does not sustain Defendant's claim of ineffective assistance.

Defendant's complaint that counsel's performance was deficient in failing to have Spellissy "take a polygraph test and submit it to court before the trial" is frivolous.  Polygraph evidence is generally inadmissible and it was not objectively reasonable for counsel not to have subjected Spellissy to a polygraph.  In any event, Defendant can show no prejudice resulting from the absence of a polygraph, as it would not have been admissible at trial.

Finally, Defendant's complaint that counsel failed to object to the introduction of Burke's plea agreement and the prosecutor's closing argument is without merit.  Burke was a cooperating Government witness, who had earlier pleaded guilty pursuant to a plea agreement.  When he

testified, he essentially disavowed his plea agreement and testified that he and the Defendants had done nothing illegal.  He was, therefore, subject to impeachment by the Government as well as the defense, including with respect to the terms of his plea agreement.  The introduction of Burke's plea agreement was challenged by Defendants' attorneys on appeal.  The Eleventh Circuit found that the introduction of Burke's plea agreement was not erroneous.

In any event, during trial, the district court deferred on the admissibility of the plea agreement until cross examination and gave a cautionary instruction after it was introduced, limiting its admissibility to the jury's assessment of Burke's credibility. (CR Dkt. 111, pp. 645-46). Accordingly, even if counsel failed to object, the district court anticipated the objection and properly admitted the plea agreement after Burke was cross examined.   In sum, there was nothing objectionable to its introduction and even if an objection should have been made, Defendant can show no prejudice.

Defendant was represented by two experienced criminal defense attorneys retained by Defendants.  Their trial performance was, from the perspective of the undersigned who presided over the trial, objectively reasonable.  Their closing arguments were outstanding.  Their cross examination of the Government's witnesses was effective.  For example, Mr. Doherty cross examined Burke's supervisor, Pettigrew, obtaining an acknowledgment from him that Burke made no decisions, only recommendations, with respect to procurement, and that he could find no instance where Burke influenced the process on behalf of Spellissy. (CR Dkt. 111, pp. 676-77; 680).[14]

Apparently satisfied that the Government's case was substantially undercut by Pettigrew's

---

[14] For purposes of trial, Spellissy was represented by Mr. Doherty and SDI was represented by Doherty's partner, Mr. Brown (CR Dkt. 48).  This tactic enabled defense counsel to effectively have two cross examinations of each Government witness, and two closing arguments.

acknowledgments and Burke's disavowal of his plea agreement and protestations of innocence, counsel determined not to present a defense, choosing to challenge the Government's case based on reasonable doubt. From an objective perspective, that tactical decision cannot be said to have been unreasonable and will not be second guessed by the Court, as Defendant urges.

In determining whether counsel's performance was deficient, judicial scrutiny is "'highly deferential' and requires [the courts] to 'indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment.'" *Chandler v. United States*, 218 F.3d at 1314 (quoting *Strickland v. Washington*, 466 U.S. at 689-90). "Strategic choices, even those 'made after less than complete investigation,' are evaluated for their reasonableness and 'counsel's reliance on particular lines of defense to the exclusion of others-whether or not he investigated those other defenses-is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable.'" *Id*. at 1318 (quoting *Strickland*, 466 U.S. at 690-91).

Further, counsel's performance will not be graded. "Our role in reviewing an ineffective assistance claim is not to 'grade' a lawyer's performance; instead, we determine only whether a lawyer's performance was within 'the wide range of professionally competent assistance.'" *Van Poyck v. Fla. Dept. of Corrections,* 290 F.3d 1318, 1322 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 690). "The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." *Id.* (citing *Chandler*, 218 F.3d at 1315).

Ultimately, the issue is whether "the adversarial process at trial . . . worked adequately." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Defendant's burden is accordingly a "heavy one."

*Id.* Unreasonable performance is shown where the performance is such that "no competent counsel would have taken the action that [Defendant's] counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001). In other words, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers*, 13 F.3d at 386 n.2; *Ball v. United States*, 271 Fed. Appx. 880, 883 (11th Cir. 2008), *cert. denied*, 129 S.Ct. 473 (2008).

Contrary to Defendant's hindsight criticism, there was nothing patently unreasonable about counsel's trial performance and tactical decisions. Considering the relief counsel obtained through their post trial motion for judgment of acquittal, their performance was nothing short of outstanding. Their tactical decision not to present a defense cannot, therefore, be reasonably questioned. Counsel's strategies cannot be second guessed, as "judicial scrutiny of counsel's performance must be highly deferential." *Chandler,* 218 F.3d at 1314 (quoting *Strickland v. Washington,* 466 U.S. at 689).

Where, as here, counsel is experienced, the presumption of competent representation is even higher. *Id.* Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). Moreover, where the record is incomplete or unclear about counsel's actions, it is presumed that counsel exercised reasonable professional judgment. As counsel's trial strategy is presumptively reasonable, the determination is not "that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not do a specific act." Rather, the presumption is "that what the

-20-

particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Chandler,* 218 F.3d at 1314-15.

Defendant has not show that counsel's tactical decisions were patently unreasonable, considering the weaknesses which developed in the Government's case in chief.  Although they did not persuade the jury, the Court was persuaded as to all but one count.  Further, Defendant has shown no prejudice resulting from the claimed deficiencies in counsels' trial preparation, cross examination or trial performance.  This claim of ineffective assistance of counsel is without merit under *Strickland.*

At sentencing

Defendant, without any factual support whatsoever, alleges that counsel "showed up at the sentencing hearing un-prepared," that "counsel for SDI was not present," and that counsel "did not have any witnesses present and did not have a copy of the final pre-sentencing report when the judge started asking questions."  These contentions are completely unsupported and in part disingenuous, as demonstrated by the transcript of the sentencing hearing, which belies each of these contentions.  In any event, Defendant has shown no prejudice from the alleged deficiencies in counsel's performance during sentencing.

First, Spellissy expressly consented to Mr. Brown being excused from the sentencing hearing to resume trial before another judge. (CR Dkt.114, p. 22).  The Court authorized Mr. Brown's partner, Mr. Doherty, to represent SDI, without objection from any party. (Id.)  Defendant's contention that its counsel was not present for sentencing.  Although technically accurate, is accordingly disingenuous.

-21-

Second, counsel obviously had a copy of the Presentence Report, as evidenced by Mr. Doherty's objections and insightful comments in response to the Court's questions about those objections. (CR Dkt. 114, pp. 23-25; 45). Indeed, Mr. Doherty expressly referred to a specific paragraph in the PSR in response to one of the Court's questions. (CR Dkt. 114, p. 25). To the extent Defendant relies on Mr. Doherty's objection to a paragraph in an earlier version of Spellissy's PSR, as an indication that Doherty did not possess the final version of the PSR (CR Dkt. 114, p. 46), that reliance is misplaced and certainly does not demonstrate deficient performance on counsel's part under the first prong of the *Strickland* test.[15]

In accordance with the specific procedures outlined in Local Rule 4.12, Local Rules for the Middle District of Florida, the parties are required to submit objections to a PSR. The probation officer is directed to "conduct any further investigation and make any revisions," after which, the report shall be submitted to the sentencing judge, "accompanied by an addendum setting forth any objections counsel may have made that have not been resolved . . . ." The contents of the PSR and any addendum are required to be disclosed "to the defendant and to counsel."

As a practical matter, when an objection to a paragraph in an initial version of a PSR is resolved in a defendant's favor, that paragraph is removed, the paragraphs are renumbered, and an updated addendum is drafted and distributed to counsel and the Court. In accordance with the Local Rule, counsel receives a copy of the PSR and any addendum, including updated addendums after revisions are made. Defendant's contention that Mr. Doherty did not have a copy of the final version of the PSR is plainly misguided, and wholly unsupported. Doherty simply made a mistaken reference to a paragraph which had been removed pursuant to his objection. This mistake does not

---

[15] Separate PSRs were prepared for Spellissy and SDI.

equate to deficient performance under the first prong of the *Strickland* test. Certainly Defendant can make no showing of any prejudice from the mistake, as the removed paragraph had no bearing on the sentence imposed.

Contrary to Defendant's unsupported contention that counsel was not prepared for sentencing, the record and transcript demonstrate that counsel was indeed prepared. Counsel forwarded letters written on behalf of Defendant Spellissy to the Court, interposed objections to the PSRs and objected to a fine being imposed with respect to SDI. Further, Doherty made insightful comments and arguments concerning the contents of Spellissy's PSR, and effectively cross examined the Government's witness. Doherty made a lengthy argument in mitigation on behalf of Spellissy and properly cited the enumerated sentencing factors in 18 U.S.C. § 3663(a). There is nothing about Mr. Doherty's performance which was objectively unreasonable. Nor has Defendant demonstrated that it was prejudiced by any alleged deficient performance on the part of counsel. This claim of ineffective assistance is likewise without merit.

In **Ground Nine**, Defendant contends that "[t]he President (Spellissy) was denied his constitutional right to testify at the *Franks* hearing and trial." Defendant contends that his attorney "never explained that it was their constitutional right to testify and the President insisted that he testify and defense counsel did not let him." (Dkt. 1, p. 63). Defendant's contention presumes that a corporate defendant enjoys the same Sixth Amendment right to testify as an individual defendant, although Defendant cites no authority supporting that contention.

A criminal defendant has a constitutional right to testify at trial which cannot be waived by defense counsel. *Hester v. United States*, 335 Fed. Appx. 949, 951 (11th Cir. 2009); *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir.), *cert. denied*, 506 U.S. 842 (1992). The decision to

-23-

testify, or not, is personal to the defendant, and cannot be exercised by counsel. *Id.* at 1533. ("Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide.")

"Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf." *Cuthbert v. United States*, 296 Fed. Appx. 904, 906 (11th Cir. 2008), *cert. denied*, 130 S.Ct. 311 (2009)(quoting *United States v. Teague*, 953 F.2d at 1532.)  If a defense attorney deprives the client of the right to testify, counsel's conduct violates the deficient performance prong of the *Strickland* test. *Geer v. United States*, 354 Fed. Appx. 417, 419 (11th Cir. 2009).

To be effective in this context, counsel must advise a defendant of his right to testify or not testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide whether to testify. *McGriff v. Department of Corrections*, 338 F.3d 1231, 1237 (11th Cir. 2003).  Counsel is strongly presumed to have been competent, and Defendant's burden of persuasion, although not insurmountable, is a "heavy one." *Chandler v. United States*, 218 F.3d 1305, 1314-16 (11th Cir. 2000).  Where, as here, counsel is experienced, the presumption of competence is even higher. *Id.*; *Reynolds v. United States*, 233 Fed. Appx. 904, 905 (11th Cir. 2007).

Whether a corporate defendant enjoys the same constitutional right to testify as an individual defendant is unclear.  Corporate identity has been determinative of whether a particular constitutional right is or is not available to a corporation. *Wilson v. United States*, 221 U.S. 361, 382-86 (1911)(privilege against self incrimination unavailable to corporation); *United States v. White,* 322

U.S. 694, 698 (1944); *United States v. Martin Linen Supply Co.*, 430 U.S. 564 (1977)(corporation protected against double jeopardy); *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765 (1978)(First Amendment right to freedom of expression inures to the benefit of corporate entities.).

On the other hand, some constitutional protections are "purely personal" by nature, such as the privilege against self incrimination and the right to privacy, and are not available to corporations. *See Church of Scientology of California v. Cazares*, 638 F.2d 1272, 1280 n.7 (5th Cir. 1981). These guarantees are considered individualized, and therefore unavailable to a corporate entity, because of the "historic function" of the particular guarantee. *First Nat. Bank of Boston v. Bellotti*, 435 U.S. at 778 n.14. "Whether or not a particular guarantee is 'purely personal' or is unavailable to corporations for some other reason depends on the nature, history, and purpose of the particular constitutional provision." *Id.*

Applying this reasoning, it is apparent that the constitutional right to testify at trial is directed primarily to the protection of an individual, personal right of a criminal defendant. *See United States v. White,* 322 U.S. at 698 ("We hold, however, that neither the Fourth nor the Fifth Amendment, both of which are *directed primarily to the protection of individual and personal rights*, requires the recognition of a privilege against self-incrimination under the circumstances of this case.")(emphasis added). It follows that, like the right against self incrimination, the right to testify is "essentially a personal one, applying only to natural individuals." *Id.* Indeed, the right to testify is "a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." *Rock v. Arkansas*, 483 U.S. 44, 52 (1987)(discussing constitutional origin of right to testify). The very essence of the right to testify is an opportunity for the accused to "offer his own testimony." *Id.* As the Supreme Court reasoned:

> In fact, the most important witness for the defense in many criminal cases is the
> defendant himself. There is no justification today for a rule that denies an accused the
> opportunity to offer his own testimony. Like the truthfulness of other witnesses, the
> defendant's veracity, which was the concern behind the original common-law rule,
> can be tested adequately by cross-examination.

*Rock v. Arkansas*, 483 U.S. at 52.

Implicit in that reasoning is that the right inures to the benefit of individuals, as opposed to entities like a corporation.  Since the right is personal, similar to the right against self incrimination, it cannot be utilized by a corporation, which can speak only through its officers or authorized representative.  Accordingly SDI, a corporate entity, has no constitutional right to testify and may not therefore premise its claim of ineffective assistance of counsel on the deprivation of a constitutional right it does not enjoy.  Ground Nine fails for lack of standing.

Even if SDI has a constitutional right to testify through its corporate officer, Spellissy, the claim fails.  Defendant's contention that Spellissy was prevented from testifying at trial is belied by the *in camera* hearing conducted by the Court during trial, in which the Court expressly advised Spellissy that the decision to testify was "your decision alone," after considering the advice of his attorney (CR Dkt. 111, pp. 744-46).[16]  Implicit in that discussion is that Spellissy was informed and understood that he had the right to testify during the trial.  Spellissy expressly confirmed on the record that he made the decision not to testify, that he had no questions about that decision, and that there were no "conflicts or issues that [he] need[ed] to share" with the Court "concerning that very important decision." (Id.).

If, as Defendant apparently now contends, it disagreed with counsel's strategic decision not to put Spellissy on the stand, it was incumbent upon Spellissy to apprise the Court of that

---

[16] Considering Defendant's contention, the side bar *in camera* hearing is ordered unsealed.

disagreement during the *in camera* hearing, failing which it is presumed that Spellissy knowingly waived his right to testify. *See Goff v. Bagley*, 601 F.3d 445, 473 (6th Cir. 2010)("Indeed, 'when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed,' and if a defendant disagrees with this decision, he 'must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand'" . . . "When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct.  Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so." *Id.* (quoting *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000)).

In sum, Defendant's conclusory allegation that its attorney prevented Spellissy from testifying is "affirmatively contradicted by the record."  *See Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989)(no evidentiary hearing required where allegation affirmatively contradicted by record).

With respect to Defendant's contention that its attorney failed to explain "that it was their constitutional right to testify and the President insisted that he testify and defense counsel did not let him" (Dkt. 1, p. 63), this contention contradicts itself.  If, as Defendant contends, Spellissy "insisted" on testifying, Spellissy necessarily knew that he had the right to testify.  Likewise implicit in this contention is an acknowledgment that there was a discussion between Spellissy and counsel about whether Spellissy should testify, and that counsel advised Spellissy not to take the stand.

Even if counsel failed to explain Spellissy's right to testify from a constitutional perspective, it is apparent from Defendant's allegations and the *in camera* colloquy conducted during trial that Spellissy was fully aware of his right to testify and made the decision not to testify.  As noted, the

-27-

Court explained to Spellissy that he had the right to testify and that the decision was his alone to make. Spellissy confirmed that it was his decision not to testify, and that he had no question about his decision. Defendant can show no prejudice resulting from this alleged deficient performance.

With respect to Defendant's contention that defense counsel prevented Spellissy from testifying at the *Franks* hearing, that contention has no *constitutional* merit. Defendant cites no authority for the proposition that Defendant, through Spellissy, had a constitutional right to testify at the *Franks* hearing. Indeed, Defendant did not have a constitutional right to attend the hearing. *United States v. Pepe*, 747 F.2d 632, 653-54 (11th Cir. 1984)("[t]he right to be present at every stage of trial does not confer upon the defendant the right to be present at every . . . [hearing or] conference with the trial judge at which a matter relative to the case is discussed." (quoting *United States v. Vasquez*, 732 F.2d 846, 848 (11th Cir. 1984)); *United States v. Gradsky*, 434 F.2d 880, 882-83 (5th Cir. 1970), *cert. denied,* 409 U.S. 894 (1971)(no Sixth Amendment right to be present during pretrial suppression hearing).[17]

Regardless of whether a defendant has a constitutional right to testify at a pretrial hearing, in the context of an ineffective assistance claim, it is apparent that in a given circumstance, counsel could perform deficiently by failing to discuss with the client the right to testify and the risks and strategic implications of testifying, or counsel prevents the client from testifying. Notwithstanding, where, as here, Defendant has shown no prejudice from counsel's alleged deficient performance, Defendant cannot satisfy the second prong of the *Strickland* test. *See Beeman v. Iowa*, 108 F.3d 181,

---

[17] *But see Rock v. Arkansas*, 483 U.S. at 51 n.9 ("This right reaches beyond the criminal trial; the procedural due process constitutionally required in some extrajudicial proceedings includes the right of the affected person to testify."); *Reinert v. Larkins*, 379 F.3d 76, 95-96 (3rd Cir. 2004); *United States v. Rashaad*, 249 Fed. Appx. 972 (4th Cir. 2007).

184 (8th Cir. 1997)(no prejudice from counsel's failure to call defendant as witness in suppression hearing); *Reinert v. Larkins*, 379 F.3d 76, 95-96 (no prejudice because defendant would not have "added anything to the mix in his favor.").

A search warrant affidavit must "set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate judge to make an independent evaluation of the matter." *Franks v. Delaware,* 438 U.S. at 165. Although the Fourth Amendment requires a "truthful showing," that "does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct . . . ." It must be "truthful in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.*

In analyzing the veracity of the warrant affidavit, the Court referenced each contention Defendants made in their motion to suppress. (CR Dkt. 44). The cross examination of the affiant and the testimony of the other witnesses supported the Court's factual findings relative to whether the averments were truthful in the context of *Franks*. Defendant has not shown how it was prejudiced by the absence of Spellissy's testimony. Defendant proffers nothing Spellissy could have testified to which would have changed the result of that hearing. Even if Spellissy had testified, the result of the *Franks* hearing would have been the same. In sum, Spellissy's testimony would have added nothing to the mix.

Defendant seemingly argues that Spellissy's testimony would have established that he was guilty of nothing. However, the *Franks* hearing necessarily involved an issue "extraneous to guilt." *Franks v. Delaware,* 438 U.S. at 170. Indeed, the Court's order denying the motion to suppress identified several misrepresentations, omissions and examples of statements made in reckless disregard for the truth in the search warrant affidavit. (CR Dkt. 44). Notwithstanding, after those

-29-

statements and misrepresentations were disregarded, probable cause was found to exist for a violation of 18 U.S.C. § 207(a)(2).

Even assuming a constitutional right to testify at a pre-trial hearing, and that counsel was deficient in not explaining that right to Defendant, and that counsel prevented Spellissy from testifying, Defendant has not demonstrated any prejudice resulting from that allegedly deficient performance.

### Conclusion

"The bar for coram nobis relief is high," and the writ may issue only when (1) "there is and was no other available avenue of relief" and (2) "the error involves a matter of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid." *United States. v. Aviles,* 2010 WL 2070677, 1 (11th Cir. 2010)(quoting *Alikhani v. United States,* 200 F.3d 732, 734 (11th Cir.2000)).

Defendant has not demonstrated that any of the errors it contends occurred involved a matter of fact "of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid." Nor has Defendant demonstrated a fundamental miscarriage of justice in its prosecution and conviction. An evidentiary hearing is unnecessary. Therefore, it is

**ORDERED AND ADJUDGED** that Defendant's Petition for a Writ of Error Coram Nobis to Vacate a Judgment (Dkt. 1) is DENIED. The Clerk is directed to close this case.

**DONE AND ORDERED** this 27th day of September, 2010.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record

-30-